**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicholas Willard Slater, et al., | No. CV-18-04251-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Pending before the Court is Defendants' motion to enforce a settlement agreement (Doc. 24). The Court will hold an evidentiary hearing on the motion on November 21, 2019 at 9:30 a.m. in Courtroom 601 of the Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona 85003-2151. In anticipation of this hearing, the Court will address what has and hasn't been included in the rather sparse briefing of this motion.

**BACKGROUND**

Defendants assert that on June 21, 2019, the parties participated in a private mediation, during which Plaintiffs proposed "a settlement offer that was to be open for 10 days after the mediation." (Doc. 24 at 1.) Defendants further assert that on June 28, 2019, the State[1] "clearly and unequivocally communicated its acceptance of Plaintiff's proposed settlement terms . . . by way of an email . . . reciting all the specific conditions that Plaintiff[s] proposed as acceptable at mediation." (*Id.* at 2.) Defendants attached the June

---
[1] The motion to enforce was brought by all Defendants, but it appears that the motion asserts that a settlement agreement was reached between Plaintiffs and the State only.

28, 2019 email, which stated:

> I have received authorization from Arizona Game and Fish to accept your offer at the mediation in this matter as follows:
>
> 1. The State's payment to Mr. Slater in the amount of $75,000.
>
> 2. Payment of the Slaters' half of [the mediator's] fee.
>
> 3. A modification of Mr. Slater's lifetime ban to a 10 year suspension upon approval and a vote by the Commission at a public meeting.
>
> 4. A reinstatement of Mrs. Slater's license upon approval and a vote by the Commission at a public meeting.
>
> 5. Other standard terms and conditions as set forth in the written settlement agreement and release, previously sent to you and [the mediator] on June 11, 2019.
>
> Please send me a direction on how the funds should be made payable. I will finalize the written settlement agreement and send it to you soon.

(Doc. 25-2 at 2.)

Defendants also attached an email sent two weeks later, on July 12, 2019, which stated:

> Attached is the settlement agreement for your clients' signature. Please have them sign and notarize their signatures where indicated. Your signature approving form and content is also required.
>
> Upon receipt of the fully executed settlement agreement the State shall issue the settlement draft payable to you and your clients. Please provide us with the form of payees as it should appear on the draft.
>
> Upon your receipt of the settlement draft you are authorized to deposit the funds in your trust account but are not authorized to distribute the funds until a fully executed stipulation for dismissal with prejudice is received by my office.
>
> Additionally, please provide us with your tax ID and a current W-9 form.
>
> I have not yet filed the notice of settlement with the Court but will do so next week absent receiving one filed by your office by then.
>
> It has been a pleasure working with you to bring this case to its final resolution.

(Doc. 25-3 at 2.)

And Defendants attached Plaintiffs' counsel's July 15, 2019 response to the July 12, 2019 email:

> Thank you[,] Michael. I forwarded the Settlement Agreement to my clients. I will follow up with you after I speak to them about it.

(Doc. 25-4 at 2.)

Finally, Defendants attached an email Plaintiff's counsel sent one month later, on August 14, 2019, stating:

> We are very close to getting this matter fully resolved. However, we have a few changes and additional terms we believe are necessary to finalize this matter. At your earliest convenience, I would like to discuss these terms to provide you with a better understanding as to why we believe these terms are critical. . . . Here are our proposed changes to the Settlement Agreement which would finalize the matter:
>
> 1. Under section 2(b): Change the 10 year suspension to a 5 year suspension. Also, please change the last sentence to "Any subsequent game and fish violations shall be subject to a lifetime ban as authorized under Arizona statutory law."
>
> 2. Under section 2: Please add a subpart: "(e) State of Arizona and the Arizona Game and Fish Commission agree no further civil, criminal, or administrative charges or claims will be brought or asserted against Plaintiffs as to any charges or claims Defendants are aware of that may exist at the time of execution of this agreement or which Defendants may have investigated or are currently investigating.["]
>
> 3. Under section 11: Please change the last sentence in paragraph 1 of section [] 11 to "Plaintiffs and plaintiffs' counsel further agree that they will not participate in any press conference or release, distribute, or disseminate through social media or press releases, information regarding the lawsuit or settlement.["]
>
> Please let me know when you have time to discuss this matter with me.

(Doc. 25-5 at 2.)

In sum, Defendants argue that (1) Plaintiffs made an oral settlement offer during the mediation on July 21, 2019; (2) Defendants accepted that offer in the June 28, 2019 email, which also memorialized the terms of the offer; and (3) notwithstanding all of this, on August 14, 2019, Plaintiffs demonstrated an intention "not to execute the settlement agreement memorializing the terms of the previously accepted settlement agreement." (Doc. 24 at 4.)

Plaintiffs respond that "[d]uring the mediation, there were various terms that were discussed, but there was no final agreement of the terms when the mediation terminated,

let alone any signed agreement." (Doc. 27 at 1-2.) But this is an uncontroversial statement; all parties agree that a settlement agreement was not reached *during* the mediation. Rather, Defendants assert that during the mediation, Plaintiffs made an oral offer of settlement with specific terms and a 10-day acceptance deadline. Notably, Plaintiffs' brief does not explicitly deny that Plaintiffs made such an oral settlement offer during the mediation. Nor do Plaintiffs assert that, although they made an oral settlement offer during the mediation, Defendants' subsequent attempt to accept it (via the June 28, 2019 email) was invalid because the acceptance altered the terms.

Plaintiffs do, however, provide several additional emails that Defendants failed to attach, demonstrating ongoing negotiations regarding the terms of potential settlement after June 28, 2019. Plaintiffs argue that if a settlement had been reached on that date, "the Defendants would not have continued negotiations as to the settlement terms." (Doc. 27 at 2.)

Indeed, on August 23, 2019, Defendants' counsel emailed Plaintiff's counsel regarding the "changes and additional terms" proposed in the August 14, 2019 email:

> I have proposed your changes to AZGF. I confirmed that there is absolutely no chance that the Commission will reduce the suspension from ten to five years. That is a deal killer. You may take that message back to Plaintiffs.
>
> I will let you know when I hear back on the other modifications.

(Doc. 27-5 at 2.)

On August 27, 2019, Defendants' counsel emailed Plaintiff's counsel again, stating, "I have conveyed your request regarding settlement terms to AZGF for comment. I should hear back sometime next week. I will keep you advised." (Doc. 27-6 at 2.)

On September 4, 2019, Defendants' counsel emailed Plaintiff's counsel, stating, "In accord with our prior discussion by phone, attached is a revised settlement agreement that should encompass the changes you requested. Based on your comments, I also added language regarding the personnel files of named defendants. Please let me know when your client has signed." (Doc. 27-7 at 2.)

On September 20, 2019, Defendants filed the pending motion to enforce the

- 4 -

settlement. Two weeks later, on October 7, 2019—the morning on which Plaintiffs' response was filed—Plaintiffs' counsel emailed Defense counsel "to follow up" as to Plaintiffs' "request to allow any big game draws to be passed through to his kids," noting that granting the request would result in having "this matter wrapped up." (Doc. 27-8 at 2.) Defense counsel swiftly replied, "The Department cannot agree to your proposed modification of the settlement." (Doc. 27-9 at 2.)

**DISCUSSION**

The Court has inherent authority to enforce agreements that settle litigation before it. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994). However, "enforcement upon motion [is] inappropriate where material facts concerning the existence or terms of a settlement [are] in dispute." *Id. See also Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) ("It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it. However, . . . [w]here material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing.") (citations omitted) (emphasis in original).

State contract law governs whether the parties reached an enforceable agreement. *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014). *See also Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) ("The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally."). Under Arizona law, "for an enforceable contract to exist[,] there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Savoca Masonry Co. v. Homes & Son Const. Co.*, 542 P.2d 817, 819 (Ariz. 1975). "An offer is a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 677 P.2d 1317, 1320 (Ariz. Ct. App. 1983). "Although the terms and requirements of an enforceable contract need not be stated in minute detail, it is fundamental that, in order to be binding, an agreement must be definite and certain so that the liability of the parties may

be exactly fixed." *Pyeatte v. Pyeatte*, 135 Ariz. 346, 350 (Ariz. Ct. App. 1982). "The very existence of the contract itself, the meeting of the minds, the intention to assume an obligation, and the understanding are to be determined in case of doubt, not only from the words used, but also from the situation, acts and conduct of the parties, and from the attendant circumstances." *Malcoff v. Coyier*, 484 P.2d 1053, 1055 (Ariz. Ct. App. 1971). The party seeking enforcement of the contract has the burden of proving its existence. *Id.*

Plaintiffs contend that "[a]t no time was there any agreement to the terms of the settlement." (Doc. 27 at 1.) Defendants disagree, arguing that Plaintiffs made an oral settlement offer at mediation, but Defendants offer no affidavits to support this contention—not from Defendants, not from their counsel, and not from the mediator.[2] The only evidence they provide to support the contention that Plaintiffs made an oral settlement offer is Defendants' June 28, 2019 email purporting to accept that offer. (Doc. 25-2 at 2.) And although Plaintiffs do not explicitly deny making an oral settlement offer with the terms denoted in the June 28, 2019 email—let alone provide an affidavit denying it— Plaintiffs' assertion that an agreement was never reached implicitly denies it. Moreover, the August 23, 2019, August 27, 2019, and September 4, 2019 emails from Defendants' counsel (Docs. 27-5 at 2, 27-6 at 2, 27-7 at 2) indicate that the parties were continuing to negotiate the terms of a potential settlement long after the agreement had purportedly been reached.[3] Thus, the "conduct of the parties" and the "attendant circumstances" suggest the parties had not yet reached a settlement.[4] *Malcoff*, 484 P.2d at 1055.

…

---

[2] Defendants note that they will "seek to obtain an affidavit from the mediator confirming the terms of settlement should the Court require this evidence for ruling on the motion." (Doc. 24 at 2 n.1.)

[3] The email exchange on October 7, 2019 has no probative value because the motion to enforce was already pending and counsel for both sides were clearly communicating in a manner that would bolster their respective positions.

[4] Defendants contend these email communications "deal with Plaintiffs' attempts to modify the agreement or put additional terms into the agreement" after a binding agreement was already reached. (Doc. 28 at 2.) But without any evidence that an offer was ever made, aside from the email correspondence that followed, the Court considers the email correspondence ambiguous as to whether there was ever a meeting of the minds.

Because the existence of a settlement agreement is in dispute, the Court will hold an evidentiary hearing.

Accordingly,

**IT IS ORDERED** that an Evidentiary Hearing is set for **November 21, 2019, at 9:30 a.m.** in Courtroom 601 of the Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona 85003-2151.

Dated this 7th day of November, 2019.

Dominic W. Lanza
United States District Judge